FILED
2017 Feb-02  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:15-cr-00310-MHH-** |
| | } | **JEO** |
| **JOSHUA MARTIN KILGRO,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Joshua Martin Kilgro is charged in a one count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1).  Law enforcement officers seized the guns identified in the indictment during a search of Mr. Kilgro's residence in July of 2013.  (Doc. 21-1).  Mr. Kilgro has filed a motion to suppress this evidence.  (Doc. 16).  Mr. Kilgro's motion presents two issues.  First, Mr. Kilgro contends that the search warrant in this case is invalid because it does not meet the Fourth Amendment's particularity requirement.  (Doc. 16, pp. 4–6).  Second, Mr. Kilgro attacks the truthfulness of the affidavit submitted in support of the search warrant.  (Doc. 16, pp. 6–9).  On this issue, Mr. Kilgro maintains that he has demonstrated that he is entitled to a hearing pursuant to *Franks v. Delaware*, 348 U.S. 154 (1978).

The Court held a hearing on Mr. Kilgro's motion on April 20, 2016.  Based on the testimony and evidence presented to the Court, and for the reasons stated below, the Court denies Mr. Kilgro's motion to suppress.  Under the particular circumstances of this case, the warrant described in sufficient detail the premises subject to the search.  In addition, Mr. Kilgro has not made the required preliminary showing of deliberate falsehood or reckless disregard necessary to open the door to a *Franks* hearing.

## I.    BACKGROUND

On July 27, 2013, Dekalb County Drug Task Force Agent Gary Hill submitted to Dekalb County Circuit Judge Shaunathan Bell an affidavit in support of a search warrant "for the residence of Josh Kilgro, Claire Davidson of 338 County Road 1006, Fort Payne, Dekalb County, Alabama more particularly described as a beige two story house with rock on the front of the house, an attached two car garage and a detached work shop."  (Doc. 16-1, p. 1).  The search warrant was initiated following a confidential informant's tip to Dekalb County Detective, Andy Hairston.  The informant told Detective Hairston that he had observed Mr. Kilgro cooking methamphetamine at the Kilgro house.  (Doc. 16-1, p. 5).  According to Agent Hill's affidavit:

> On July 27, 2013, DTF [Dekalb County Task Force] agent Andy Hairston met with a confidential informant who in the past had given Hairston information that led to the arrest of several individuals for the sell [sic] and manufacture of methamphetamine.  The informant

2

stated to Hairston that with-in the past seventy two hours of today's date (7/27/13) that they had been to the residence of Josh Kilgro and Claire Davidson located at 338 CR 1006, Fort Payne and that while at the residence had witnessed Josh Kilgro cooking methamphetamine at that residence.

(Doc. 16-1, p. 5).

In response to Agent Hill's affidavit in support of the application for a search warrant, at 6:00 p.m. on July 27, 2013, Judge Bell issued a search warrant permitting law enforcement officers to search Mr. Kilgro's residence. (Doc. 16-2, p. 1). The search warrant contains the following description of the location to be searched:

> 338 County Road 1006, Fort Payne, DeKalb County, Alabama, more particularly described as a beige two story house with rock on the front of the house, an attached two car garage and a detached work shop, the person Josh Kilgro, Claire Davidson and any person(s), outbuilding(s) and vehicle(s) on the curtilage.

(Doc. 16-2, p. 1; *see also* Doc. 16-1, pp. 1, 5, 6).

On July 27, 2013, at 7:00 p.m., Agent Hill, Officer Hairston, and several other officers with the drug task force executed the warrant at 242 County Road 1006, Fort Payne, Alabama, even though the warrant authorized a search of the house located at 338 County Road 1006.[1] (Doc. 21-1, p. 1; Doc. 29, p. 17). The house at 242 County Road 1006 was Mr. Kilgro's residence. During the search,

---

[1] Mr. Kilgro's wife testified that she and Mr. Kilgro lived at the house located at 242 County Road 1006, Fort Payne, Alabama, from on or around March 1, 2013, until May of 2014. (Doc. 29, pp. 62, 66).

officers seized methamphetamine, digital scales, and the four guns that provide the basis of the federal indictment against Mr. Kilgro. (Doc. 21-1, p. 1).

It is undisputed that the house located at 338 County Road 1006, Fort Payne, Alabama, is not Mr. Kilgro's house, and it does not match the description of the house provided in the affidavit or warrant. (Doc. 29, p. 19). The house located at 338 County Road 1006 is a red brick house with white trim; it does not have rock facing or a detached workshop. (Doc. 29, pp. 19, 49). The house located at 242 County Road 1006 is a two story house with rock on the front, an attached garage and a detached workshop, as described in the warrant. (Doc. 29, pp. 18–19, 75). According to Mr. Kilgro's wife, Claire Kilgro,[2] the house does have rock on the front and a detached workshop, but she contends that the house is gray instead of beige, and that it is actually a one story with a basement, as opposed to a two story. (Doc. 29, p. 75). Mrs. Kilgro also testified that the garage fits only one car. (Doc. 29, p. 67).

The record is disputed as to whether the numbers 242 appeared on the mailbox at the Kilgro's house when officers completed the search warrant application. Mrs. Kilgro testified that she purchased and affixed the numbers 242 to the mailbox on May 25, 2013, well before the search in July 2013. (Doc. 29, p. 64). Mrs. Kilgro testified that the numbers were black with a white, reflective

---

[2] The warrant and several other places in the record refer to Mr. Kilgro's wife as "Claire Davidson." Mrs. Kilgro testified that her name is "Claire Kilgro." (Doc. 29, p. 62).

background.  (Doc. 29, pp. 64, 65).  Officer Hairston testified that on the night of the search and prior to the search, the numbers 242 were not visible on the mailbox.  (Doc. 29, p. 37).[3]

Officer Hairston testified that at the time of the search, he did not know the street number for Mr. Kilgro's house, but he was familiar with Mr. Kilgro and knew where Mr. Kilgro lived.  (Doc. 29, pp. 12, 15).  Officer Hairston testified that he lives about a mile and a half from Mr. Kilgro's house, and he has been to Mr. Kilgro's residence between 40 and 60 times, primarily in connection with a previous owner of the residence, whom Officer Hairston also knew.  (Doc. 29, pp. 12–13, 15).  Officer Hairston had last been at the residence about a year before officers executed the search warrant.  (Doc. 29, pp. 39–40).  He also had driven by the Kilgro's house twice in the weeks leading to the search.  (Doc. 29, p. 39).

Agent Hill, like Officer Hairston, testified that although he did not know the actual street number of Mr. Kilgro's residence, he was very familiar with the street where Mr. Kilgro lived and knew the location of Mr. Kilgro's residence.  (Doc. 29, pp. 57, 58–59).  Agent Hill testified that he had been to the neighborhood several times and that he knew where Mr. Kilgro lived because he had been to the other residences on the street at one time or another.  (Doc. 29, pp. 58–59).  Agent Hill

---

[3] Mr. Kilgro produced a photo of the mailbox as Defendant's Exhibit 3 to his Motion to Supress, (Doc. 16-3), but it is undisputed that a subsequent homeowner installed the numbers depicted in this photo. (Doc. 21, p. 2, fn. 1; Doc. 29, pp. 63–64).  If the search began at 7:00 p.m. on a July evening, there should have been adequate light for officers to see the numbers on the mailbox if Mrs. Kilgro had placed numbers on the mailbox.

testified that in preparing the search warrant application, he had difficulty idenitfying the correct street number for Mr. Kilgro's house because County Road 1006, Fort Payne, Alabama, begins in the city of Fort Payne and is called Deir Drive.  (Doc. 29, p. 46).  The street reaches the county limits when it becomes County Road 1006.  (Doc. 29, pp. 46, 57).  To ascertain the street address for the search warrant application, Agent Hill testified that he called the Dekalb County 9-1-1 center, and that the center provided him with the address 338 County Road 1006, Fort Payne, Alabama, which is the address Agent Hill provided on the search warrant application.  (Doc. 29, pp. 15, 16, 47, 57).

During the search, Agent Hill reviewed the search warrant with Mrs. Kilgro, and she stated that the address was 242 County Road 1006, not 338 County Road 1006.  (Doc. 29, pp. 37, 49).  Agent Hill then wrote the correct street address on the copy of the search warrant that he left with Mrs. Kilgro.  (Doc. 29, pp. 35–36, 59).  Agent Hill testified that he was making a forensic correction to the copy as he was trained to do, but admits that he should not have changed the address on Mrs. Kilgro's copy of the warrant.  (Doc. 29, p. 49).  Agent Hill did not alter the official judicial warrant.  (Doc. 29, p. 49).

## II.    DISCUSSION

### A.    The Warrant Meets the Fourth Amendment's Particularity Requirement.

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  The Eleventh Circuit has held that "[a]n erroneous description of premises to be searched does not render a warrant invalid.  The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986).  The particularity requirement is designed to ensure that law enforcement search the location where they have probable cause to believe they will find evidence of a crime.

Mr. Kilgro concedes that while an incorrect street address alone is not enough to render a search warrant invalid, the description of the property in the present search warrant incorrectly described the house because it is actually "a one story in appearance."  (Doc. 16, p. 3).  Mr. Kilgro also contends that any description of the house in this case is useless because the house is surrounded by a fence and a gated entrance and cannot be viewed from the road.  (Doc. 16, p. 5; Doc. 26, p. 5).  Mr. Kilgro argues that "the warrant's description completely ignored the fact that the large gate and fence rendered the home and surrounding buildings completely invisible from the public road."  (Doc. 26, p. 5).

The Court is not persuaded by Mr. Kilgro's arguments. The description contained in the search warrant was sufficient to direct officers to the property where, according to a confidential informant, a crime had been committed. Whether the house is a two story structure or a one story structure with a basement is a distinction without a difference. *See United States v. Harbison*, 523 Fed. Appx. 569, 573 (11th Cir. 2013) (quoting *Burke*, 784 F.2d at 1092) ("A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers."). The same reasoning applies with respect to the color of the house. Whether characterized as beige or gray, "the search warrant describe[d] the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." *Burke*, 784 F.2d at 1092.

The fact that Mr. Kilgro's residence cannot be viewed from the road does not change the Court's analysis under the particular circumstances of this case. The evidence demonstrates that the officers executing the search warrant were very familiar with Mr. Kilgro's residence and knew exactly where Mr. Kilgro lived. *See Harbison*, 523 Fed. Appx. at 573–574 ("Like *Burke*, the physical description of the target residence, as well as law enforcement's familiarity with the property based on surveillance, puts to rest Harbison's contention that the officers did not have sufficiently particular information."). Both Agent Hill and Officer Hairston

had been to Mr. Kilgro's residence on numerous occasions and were also familiar with the other five residences on the street. (Doc. 29, pp.12–13, 15, 39–40, 57, 58–59). Neither was confused about which house on County Road 1006 belonged to Mr. Kilgro. (Doc. 29, pp.12–13, 15, 39–40, 57, 58–59). This was not, as defendant contends, "a general exploratory search onto an unidentified property." (Doc. 26, p. 4) (citing *United States v. Kahanani*, 502 F.3d 1281, 1289 (11th Cir. 2007)).

Mr. Kilgro suggests that *Burke* does not apply because the warrant in that case contained a correct physical description of the property to be searched, unlike the "erroneous description" at issue here. (Doc. 26, p. 7). Mr. Kilgro urges the Court to rely instead on *United States v. Crabtree*, 77 F. Supp. 3d 1192 (S.D. Ala. 2015), in which the court found that two warrants did not meet the Fourth Amendment's particularity requirement because the warrants described a "single family dwelling" belonging to someone other than the defendant located approximately 15 miles apart from the defendant's residence which was, in fact, an apartment complex. *Crabtree*, 77 F. Supp. 3d at 1194. The court in *Crabtree* rejected the government's argument that officers were familiar with the defendant's residence and held that a complete lack of a property's description is not what the *Burke* court contemplated. *Id*. at 1195 ("*Burke*, however, does not condone a warrants's utter lack of description of the place actually intended to be

searched (as is the case here), with the void to be filled by the officer's awareness of the intended target.").

In addition to *Crabtree*, Mr. Kilgro relies on *United States v. Garrott*, 745 F. Supp. 2d 1206 (M.D. Ala. 2010), to argue that the warrant is not sufficiently particular because it did not describe the gated entrance or fence surrounding the Kilgro residence.  (Doc. 26, p. 5).  However, *Garrott* involved a warrantless search, where officers searched the property first and only later sought a search warrant based on marijuana plants discovered during an initial exploration of the property.  *Garrott*, 745 F. Supp. at 1207–08 ("This cause is before the court on Defendants' motion to suppress evidence obtained as a result of a warrantless search of their property.").  *Garrott* has no application to the present case.  The *Garrott* court never addressed the adequacy of the warrant's description or the officers' knowledge of the target residence, because officers in that case searched the property without obtaining a warrant.  *Garrott*, 745 F. Supp. at 1207.

*Burke* is controlling in the present case, and the Court is obliged to follow its principles.  The warrant at issue here was minimally sufficient to direct searchers to the intended search location.  Because the description was sufficient, the Court may "take into account the knowledge of the officer executing the warrant." *Burke*, 784 F.2d at 1093.  Mr. Kilgro's argument that the warrant failed to mention a gated entrance or a fence surrounding the property is overcome by the officers'

familiarity with the Kilgro residence based on numerous prior visits to the Kilgro property. *Id.*; *see also United States v. Graham*, 476 Fed. Appx. 839, 841 (11th Cir. 2012) ("[T]he executing officers' personal knowledge of the residence to be searched cured any remaining ambiguity in the warrant."). Accordingly, the Court finds that the search warrant meets the particularity requirement of the Fourth Amendment.[4]

### B.   Mr. Kilgro is not Entitled to a *Franks* Hearing.

In *Franks v. Delaware*, 348 U.S. 154 (1978), the United States Supreme Court held that:

> [w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155–56. Stated another way, a defendant may challenge the veracity of an affidavit under *Franks* if he makes a "substantial preliminary showing" that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. *Franks,* 438

---

[4] By finding that the warrant at issue survives a Fourth Amendment challenge, the Court does not endorse the minimal steps that the agents took to provide information to the court that issued the warrant.

U.S. at 155–56.  If the defendant makes such a showing, he is entitled to an

evidentiary hearing on the issue.  *Id.* at 155.

> The substantial showing requirement is not easily met:
>
> "To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine. There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those allegations
> must be accompanied by an offer of proof. They should point out
> specifically the portion of the warrant affidavit that is claimed to be
> false; and they should be accompanied by a statement of supporting
> reasons. Affidavits or sworn or otherwise reliable statements of
> witnesses should be furnished, or their absence satisfactorily
> explained."

*United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting *Williams*

*v. Brown,* 609 F.2d 216, 219 (5th Cir.1979) (quoting in turn *Franks,* 438 U.S. at

171)); *see also United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001)

(quoting *Franks* and applying its analysis when evaluating an affidavit offered in

support of a wiretap order).

Mr. Kilgro contends that he is entitled to a *Franks* hearing because the

affidavit in support of the warrant contains several deliberate or reckless false

statements that are essential to a finding of probable cause.  As purported evidence

of deliberate and reckless false statements, Mr. Kilgro cites the incorrect street

address that was used in the affidavit and what he maintains is an inaccurate

description of the property.  (Doc. 16, p. 8).  Mr. Kilgro also contends that the

informant's tip that he had witnessed Mr. Kilgro "cooking methamphetamine" at

his residence within 72 hours prior to the search was inconsistent with the results of the search and inconsistent with the testimony provided by Officer Hairston at the suppression hearing. (Doc. 16, p. 8; Doc. 26, p. 9). On this point, Mr. Kilgro alleges that while the affidavit in support of the search warrant states that the confidential informant observed Mr. Kilgro "cooking methamphetamine," Officer Hairston testified that the informant told him only that Mr. Kilgro was "fixing to cook." (Doc. 26, p. 9). Mr. Kilgro argues that Officer Hairston should have clarified what, exactly, Mr. Kilgro was about to cook. (Doc. 26, p. 2).

In essence, Mr. Kilgro argues that he has satisfied his burden under *Franks* because, given the benefit of hindsight, several items contained in the affidavit proved to be inaccurate. While it is true that the street number contained in the warrant was incorrect, Mr. Kilgro has not offered any evidence that the mistake was recklessly or intentionally made. To the contrary, the testimony of Officer Hairston and Agent Hill indicate an effort to obtain the correct street number from the Dekalb County 9-1-1 center for the purposes of the warrant. (Doc. 29, pp. 46–47, 57). Mr. Kilgro has likewise failed to produce evidence that either Officer Hairston or Agent Hill made deliberate or reckless false statements with respect to the description of the property. Differences of opinion regarding a fairly neutral paint color and the proper description of the structure of the house do not rise to the level of a false statement.

Mr. Kilgro's attack on the credibility of the confidential informant, at least in the context of a *Franks* analysis, is misplaced because the question of deliberate or reckless false statements attaches only to the affiant, and not to that of a confidential informant whose agency relationship to the government is not borne out by the evidence. *See United States v. Smith*, 918 F.2d 1501, 1508 (11th Cir. 1990) (quoting *Franks*, 438 U.S. at 171) ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant.")). To the extent that Mr. Kilgro is claiming that Officer Hairston misrepresented the statements of the confidential informant—by stating that Mr. Kilgro was "about to cook [methamphetamine]" versus "cooking [methamphetamine]"— the argument is still without merit because Mr. Kilgro has not demonstrated that Officer Hairston made any statement with deliberate or reckless disregard for the truth. Officer Hairston testified that he had worked with this particular confidential informant on fifteen to twenty occasions and that in every single case, the information the confidential informant provided resulted in charges or an arrest. (Doc. 29, pp. 11, 43). Officer Hairston also testified that he understood the reference to "cooking" to mean cooking methamphetamine. (Doc. 29, p. 43). Officer Hairston stateded: "[t]hat's the slang word on the street when they mention anything about cooking, it's cooking meth." (Doc. 29, p.43).

14

Mr. Kilgro cites *Illinois v. Gates*, 462 U.S. 213 (1983), for the proposition that an informant's tip must provide "an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first hand." *Gates*, 462 U.S. at 234. Mr. Kilgro argues that the warrant in the present case fails to describe "how the informant knew it was a meth cook, where on the property it was being cooked, the ingredients used in the cook process, how far along the cook process was, the amount of meth being prepared, and which persons were present other that [sic] than defendant." (Doc. 16, p. 7). The *Gates* case did not relate to a *Franks* hearing, and it has no bearing on the issue of whether the affiant in the present case made deliberate or reckless false statements.

Although Mr. Kilgro's arguments are more appropriately directed to whether the warrant was sufficiently particular, and not the *Franks* analysis, the Court finds no support for Mr. Kilgro's contention that the warrant must contain every detail of what the informant observed. Where a warrant affidavit rests on information from a confidential informant, as in the present case, "the affidavit must demonstrate the informant's veracity and basis of knowledge." *Graham*, 476 Fed. Appx. at 841. The warrant affiant in this case did attest to the informant's veracity (indicating that Officer Hairston previously worked with the same informant and that the information led to drug arrests of several individuals), as well as the informant's

15

basis of knowledge (first hand observation of Mr. Kilgro cooking methamphetamine).  (Doc. 16-1, p. 5).

Finally, Mr. Kilgro disputes the veracity of the confidential informant's claim based on the affidavit of Mrs. Kilgro which states that she and Mr. Kilgro were not at home during most of the 72 hours preceding the search on July 27, 2013, when the confidential informant allegedly observed Mr. Kilgro cooking methamphetamine.  (Doc. 26, p. 8).  As previously stated, the question for *Franks* purposes is whether the affiant, not the confidential informant, made knowingly false statements.  Nevertheless, Mrs. Kilgro's affidavit does not disprove the informant's statement.

## III.   CONCLUSION

For the reasons discussed above, the Court denies Mr. Kilgro's motion to suppress.[5]  (Doc. 16).  The Court also finds that Mr. Kilgro has failed to make a substantial preliminary showing that officers knowingly included false statements in the affidavit in support of the search warrant, and therefore, Mr. Kilgro is not entitled to a *Franks* hearing.

---

[5] Because the Court finds that the search warrant in this case satisfies the particularity requirement of the Fourth Amendment, the Court need not address the Government's argument that exigent circumstances may have existed to justify a search of the property without a valid search warrant.  (See Doc. 28, pp. 6–9).

**DONE** and **ORDERED** this February 2, 2017.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE